IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

<table>
<tr><td>

UNITED STATES OF AMERICA

    v.

ASHRAF HASSAN-GOUDA,

               Defendant.

</td><td>

Criminal Action
No. 07-258 (JBS)

**OPINION**

</td></tr>
</table>

APPEARANCES:

Shawn T. Noud, Trial Attorney
U.S. Department of Justice
P.O. Box 972
Ben Franklin Station
Washington, D.C. 20044
    -and-
Yael T. Epstein, Trial Attorney
Department of Justice
Tax Division
Criminal Enforcement Section
601 D Street NW
Washington, DC 20004
    Attorneys for United States of America

Lori M. Koch, Assistant Federal Public Defender
Federal Public Defender's Office
800-840 Cooper Street
Suite 350
Camden, NJ 08102
    Attorney for Defendant Ashraf Hassan-Gouda

**SIMANDLE,** Chief Judge:

## I. INTRODUCTION

Defendant Ashraf Hassan-Gouda ("Gouda") has filed multiple pretrial motions in this matter including, _inter alia_, motions

to dismiss the Indictment, which was returned on March 27, 2007, due to violations of (1) his right to a speedy trial under the Sixth Amendment, (2) Fed. R. Crim. P. 48(b), and (3) the applicable statute of limitations. In response, the Government argues that Gouda fled the United States for Egypt in April of 2007 after learning that he was under Indictment and, therefore, Gouda bears the responsibility for any delay. Defendant countered the Government's argument by asserting that the Government bears the burden of proving, by a preponderance of the evidence, that Defendant concealed himself with the intent of avoiding arrest or prosecution. [Docket Item 20-1 (Def. Mem. Law Supp. Pretrial Mots.) at 12.] Defendant claims that "[t]he record thus far in this case does not demonstrate that defendant was ever advised of the charges against him, or that they had been formally filed." (Def. Mem. Law Supp. Pretrial Mots. at 12.)

The Government seeks to elicit evidence to establish that Gouda was aware that he was under Indictment before leaving the United States. Specifically, the Government seeks certain billing records of Gouda's former attorney Joseph Gindhart[1], certain email correspondence between Gindhart and Gouda, and

---

[1] Gindhart is no longer representing Gouda; he represented him from 2004 through 2007 in connection with the underlying IRS investigation of Gouda and his tax preparation business. (Feb. 25, 2013 Hr'g Tr. 52:21-53:1.)

testimony regarding an alleged conversation between Gouda and Gindhart at Gouda's place of business shortly after the Indictment issued. Ahmed Sallam, one of Gouda's employees and a witness herein, was allegedly present for a portion of this attorney-client conversation.

The principal issue herein is whether Gouda waived the attorney-client privilege of his communications with attorney Gindhart, under the circumstances of this case, as to the subject matter of the conversation at his business premises during which Ahmed Sallam was present, or alternatively whether by denying he received notice of the Indictment he has placed the issue of his notice at issue and to that extent waived otherwise privileged communications about his knowledge of the Indictment before he left for Egypt.

For the following reasons, the Court will permit the Government to take testimony from Sallam and Gindhart regarding the portion of the conversation for which Sallam was present, as the Court finds the presence of a third party constituted waiver of the attorney-client privilege. Alternatively, and in addition, the Court finds that by placing his knowledge of the Indictment at issue Gouda has waived the privilege as to the subject matter of communications with attorney Gindhart that are relevant to this limited subject of notice before leaving the United States in April 2007.

## II.  BACKGROUND

### A. Defendant's Indictment, Move to Egypt, and Extradition

On March 27, 2007, a federal grand jury sitting in the
District of New Jersey returned a sixteen-count Indictment
against Defendant Gouda. [Docket Item 1.] The Indictment alleges
that Defendant conspired to defraud the United States and the
Internal Revenue Service ("IRS") by aiding in the preparation
and presentation of fraudulent tax returns, plus 15 substantive
counts of aiding in the preparation of fraudulent tax returns.
By pre-arrangement, the Government complied with the request of
Gouda's attorney, Mr. Gindhart, and faxed a copy of the
Indictment to Gindhart on March 28, 2007 in lieu of executing an
arrest warrant for Gouda, with the understanding Gindhart would
arrange for Gouda to appear in court to face the charges.

Defendant was scheduled to appear for an arraignment before
U.S. Magistrate Judge Joel Schneider on April 3, 2007. On April
2, 2007, Mr. Joseph Gindhart wrote Judge Schneider to request
adjournment of the arraignment because Gouda had been admitted
to Atlantic City Medical Center with a heart attack. [Docket
Item 21-1.] On April 6, 2007, Gindhart wrote another letter to
Magistrate Judge Schneider, informing him that Gouda had been
released to bed rest at home following a heart

catheterization/stint implant and that Gindhart would report on

Defendant's condition after a follow-up doctor's evaluation on

April 12, 2007. [Docket Item 21-2.]

Defendant has acknowledged in his certification herein

that, contrary to resting at home, he left the United States on

April 6, 2007 for Egypt. (Certification of Gouda, filed Feb. 21,

2013, at ¶ 7.) He remained outside the United States until he

was arrested in Germany in 2011 and extradited to this country

in 2012.

On April 16, 2007, the Government contacted Gindhart for an

update. [Docket Item 21 (Gov't Opp'n Def. Pre-trial Mots.) at

2.] Gindhart advised that Gouda was in Egypt.[2] On April 19, 2007,

the Court issued a warrant for Defendant's arrest. [Docket Item

3.][3] On April 23, 2007, the government requested that Defendant

be entered as a fugitive into the National Criminal Information

System and the Treasury Enforcement Communications System to

ensure his arrest upon entry into the United States. (Gov't

Opp'n Def. Pre-trial Mots. at 2.)

The treaty governing extradition between Egypt and the

United States does not cover tax crimes and does not require the

_____

[2] Gouda is an Egyptian citizen.

[3] Defendant asserts that "[a] review of the docket for this
criminal case . . . does not show an arrest warrant issued on
[April 19, 2007] nor any other date." (Def. Mem. Law Supp.
Pretrial Mots. at 3.) The warrant was sealed, but it is Docket
Item 3, issued on April 19, 2007.

extradition of each country's own citizens. [Docket Item 21-4 at 2-3.] The Government correctly believed that Defendant could not be extradited from Egypt and asked the International Criminal Police Organization ("INTERPOL") to issue a "red notice" on the Defendant. (Gov't Opp'n Def. Pre-trial Mots. at 3.) A red notice calls on INTERPOL member nations to arrest the Defendant if he enters their jurisdiction. Before the red notice was published on February 6, 2012, INTERPOL issued a diffusion message on November 2, 2011 announcing that the red notice was pending. (Gov't Opp'n Def. Pre-trial Mots. at 3.)

Pursuant to the diffusion message, the United States' request, and the Court's outstanding arrest warrant, the Defendant was arrested in Frankfurt, Germany on December 11, 2011. (Gov't Opp'n Def. Pre-trial Mots. at 3.) Extradition proceedings took seven months, from December 11, 2011 to June 21, 2012 because Defendant contested extradition. (Gov't Opp'n Def. Pre-trial Mots. at 3-4.)

Once in the District of New Jersey, Defendant asked the Court to declare the matter complex and there were a series of continuances.[4]

---

[4] The Court's Order specifically mandated that "the period between the date this Order is signed and October 22, 2012 shall be excludable in computing time under the Speedy Trial Act." [Docket Item 12 (July 19, 2012 Order) at 3.] Defendant then requested five continuances, which were granted on October 18, 2012 [Docket Item 15], November 8, 2012 [Docket Item 17],

**B. Parties' Arguments**

On January 7, 2013, Defendant filed multiple pre-trial motions asking the Court for the following relief: (1) holding a hearing to determine whether Defendant's Speedy Trial Rights under the Sixth Amendment or Federal Rule of Criminal Procedure 48(b) have been violated and, if so, to grant Defendant's motion to dismiss; (2) holding a hearing to determine whether the statute of limitations has been violated in this matter; (3) holding a hearing to determine the appropriate sanctions for the Government's alleged failure to comply with Article 9 of the Extradition Treaty between the United States and Germany; (4) compelling the Government to disclose all exculpatory or mitigating evidence; (5) ordering the government to disclose Rule 404(b) evidence earlier than 10 days before trial; and (6) ordering the government to provide a written summary of anticipated expert testimony. [Docket Item 20.]

Defendant generally denies that he was a fugitive, because he was unaware of the Indictment.[5]

---

November 27, 2012 [Docket Item 19], and February 5, 2013 [Docket Item 22].

[5] Defendant argues that, between issuance of the arrest warrant on April 19, 2007 and issuance of the diffusion notice on November 2, 2011, he "was living openly in Egypt and traveling extensively." (Def. Mem. Law Supp. Pretrial Mots. at 4.) The Government "cannot claim surprise that he was residing in Egypt." (Def. Mem. Law Supp. Pretrial Mots. at 4.) Defendant also notes that he lived in Scotland for some of that time. (Feb. 21, 2013 Gouda Aff. ¶ 11.)

Defendant argues that "the burden is upon the Government to prove, by a preponderance of the evidence, that the accused concealed himself with the intent of avoiding arrest or prosecution." (Def. Mem. Law Supp. Pretrial Mots. at 12.) He claims that the record thus far in this case "does not demonstrate that defendant was ever advised of the charges against him, or that they had been formally filed" or "that he had any intent to avoid arrest or prosecution." (Def. Mem. Law Supp. Pretrial Mots. at 12-13.)[6]

In its opposition, as relevant to present purposes, the Government emphasizes that "the defendant, after having learned of the charges against him in the Indictment, fled to Egypt." (Gov't Opp'n Def. Pre-trial Mots. at 10.) The Government argues, "It is highly likely that at some point between the return of the Indictment on March 27, 2007 and when the defendant left the country some time in April 2007, that defendant's prior counsel communicated to the defendant that he had been indicted." (Gov't Opp'n Def. Pre-trial Mots. at 10.) Secondly, the Government asserts that "defendant's prior long-term employee corroborated defendant's knowledge of the Indictment." (Gov't Opp'n Def. Pre-trial Mots. at 10.) The Government asserts "[i]n light of the

---

[6] The Court has not summarized aspects of Defendant's motions that are not the subject of the present dispute regarding the attorney-client privilege and its waiver. Defendant's motions will be addressed in due course.

defendant's post-Indictment flight to Egypt, he cannot complain
of any delay attributable to his flight or unavailability."
(Gov't Opp'n Def. Pre-trial Mots. at 10.)

In addition, the Government argues that the statute of
limitations was tolled upon the bringing of the Indictment in
2007.

**C. February 25, 2013 Hearing**

The Court scheduled a hearing for February 25, 2013 to
address these motions.

Shortly before the hearing, the Government advised
Defendant that it intended to call Gindhart and Gouda's former
employee Ahmed Sallam to testify. On February 22, 2013,
Defendant submitted a letter making a motion to preclude the
testimony of Gindhart and Sallam as to privileged attorney-
client communications. Defendant argued that, even if Sallam
overheard a conversation between Gindhart and Gouda, the
attorney-client privilege was not waived if Gouda did not intend
to waive the privilege and if the "third party was present in
such capacity as to be identified with the client." (Def. Feb.
22, 2013 Letter at 2.)

On February 25, 2013, the Government responded to
Defendant's letter, asserting that it only intended to use the
testimony of Sallam and Gindhart to establish that Gouda was
informed of the Indictment. Moreover, the Government argued that

Sallam was not acting as Gouda's agent and did not possess a commonality of interest with the Defendant; therefore, the attorney-client privilege was waived by his presence in the conversation.

The morning of the hearing, an issue also arose as to whether attorney Gindhart's billing records could be used to establish whether he discussed the issuance of the Indictment with Gouda.

The Court decided, at the February 25, 2013 hearing, to reserve decision on the late-raised attorney-client privilege issues and to limit testimony to matters other than the substance of the conversation that Sallam overheard and Gindhart's other communications with his client about the Indictment. Sallam and Gindhart testified on these background matters, and IRS liaison to INTERPOL Jocylin Hill also testified as to other matters.

At the close of the hearing, the parties requested an opportunity to submit additional briefing regarding the attorney-client privilege issues, which has now been received.

### D. Subsequent Briefing

On February 27, 2013, Defendant submitted a letter brief to the Court addressing his motions to preclude attorney-client privileged testimony and documents from Gindhart. [Docket Item 25.] The documents at issue are billing records and email

communications between Gouda and Gindhart. Defendant argues that
the attorney-client privilege protects an attorney's billing
records to the extent that they reveal the nature of services
rendered. Defendant also argues that the email communications
are privileged. Gouda asserts that he has not waived the
privilege because his intent in leaving the United States is
irrelevant to his speedy trial and statute of limitations
arguments. Defendant also argues that Attorney Gindhart's
testimony should be precluded because he testified on February
25, 2013 that he "did not recall any particular conversations
with the defendant about the Indictment and . . . [a]ccordingly,
it appears doubtful additional testimony would be helpful."
(Def. February 27, 2013 Letter at 1.)

The Government submitted a letter brief in response on
March 8, 2013 asking the Court to deny Defendant's motions to
exclude testimony and documents. [Docket Item 26.] The
Government argues that the billing records and other documents
could be used to refresh Gindhart's recollection of the
conversations that he had with Gouda. In addition, the
Government asserts that the communications made in Sallam's
presence were not made in confidence and therefore were not
privileged. The Government also argues that the billing records
themselves are not protected in their entirety because the
Government only seeks "evidence regarding a simple fact: whether

defense counsel had informed his client of the indictment,"
which is not a privileged communication. (Gov't March 8, 2013
Letter at 6.)

The Government notes that, because Gouda was represented by
counsel in 2007, the Government was ethically prohibited from
contacting him directly to inform him of the Indictment. The
Government states, "The defendant cannot be permitted to attack
the indictment premised on an argument that his counsel had not
informed him of the indictment, yet hide behind the shield of
the attorney-client privilege when the government seeks to repel
the defendant's attack." (Gov't March 8, 2013 Letter at 7.) The
Government concludes that, by making speedy trial and statute of
limitations claims, Defendant has waived the attorney-client
privilege in terms of his conversations regarding his knowledge
of the Indictment.

The Government also asks the Court to conduct an in camera
review of the email communications between Gindhart and Gouda to
determine whether they are privileged.

### III. ANALYSIS

#### A. Sixth Amendment Right to Speedy Trial

The Sixth Amendment guarantees that "[i]n all criminal
prosecutions, the accused shall enjoy the right to a speedy and
public trial . . . ." U.S. Const. Amend. VI. In this case, six

years have passed since the Indictment was returned. This length of time is presumptively prejudicial, and the Court must conduct an inquiry into the causes of the delay and the possible prejudice that may result. See United States v. Dent, 149 F.3d 180, 184 (3d Cir. 1998) ("approximately five-year delay between Dent's arrest and his trial is sufficiently lengthy to trigger full inquiry into the possibility that Dent suffered prejudice as a result"); Doggett v. United States, 505 U.S. 647, 651 n. 1, 658 (1992) (observing that most courts find a postaccusation delay "presumptively prejudicial" at least as it approaches one year).

Once the defendant identifies a presumptively prejudicial delay in bringing his case to trial, "determining whether that delay violated the Sixth Amendment requires a highly fact-specific analysis that balances all the relevant circumstances." Dent at 184. In conducting this analysis, the Supreme Court has emphasized four factors: "Length of delay, the reason for the delay, the defendant's assertion of his [speedy trial] right, and prejudice to the defendant." Barker v. Wingo, 407 U.S. 514, 530 (1972). The factual record is presently incomplete as to Defendant's knowledge of the Indictment and responsibility for the delay. Key to this assessment is the determination of the factual dispute whether Gouda knowingly fled from the United States to avoid facing the Indictment.

**B. Evidence Regarding Gouda's Knowledge of Indictment and Reason for Delay**

There is already considerable direct and circumstantial evidence before the Court that Gouda went to Egypt to flee arrest. First, Gouda's employee Ahmed Sallam testified on February 25, 2013 that he discussed the Indictment with Gouda. Sallam worked for Gouda from 2000 to 2007 (Feb. 25, 2013 Hr'g Tr. 4:19-22), and he learned of Gouda's Indictment because it was announced on TV (Feb. 25, 2013 Hr'g Tr. 9:12-25). He testified that he remembered learning about the Indictment "because it was on TV, it was a shock." (Feb. 25, 2013 Hr'g Tr. 10:6-7.)

Sallam called Gouda "immediately" after learning of Indictment and Gouda answered the telephone. (Feb. 25, 2013 Hr'g Tr. 10:12-25.) Sallam described his conversation with Gouda: "I told him .. . you need to look at – you need to see the news. He says why? I said because they just announced you've been indicted." (Feb. 25, 2013 Hr'g Tr. 11:13-15.) Sallam saw Gouda the morning after their telephone conversation and "[Gouda] looked like he didn't sleep. And he mentioned that he stayed up to watch the news, the rerun, and he watched what I told him." (Feb. 25, 2013 Hr'g Tr. 12:8-10.) That same morning, Gouda told Sallam that he was going to have a meeting with his attorney, Joe Gindhart, to discuss the Indictment further. (Feb. 25, 2013

Hr'g Tr. 12:14-19.) Sallam was certain that Gouda did, in fact, meet with his attorney because Sallam was present in the office for this meeting. (Feb. 25, 2013 Hr'g Tr. 12:24-13:12.) This meeting occurred one to two days after the Indictment was announced. (Feb. 25, 2013 Hr'g Tr. 45:15-21.)

Sallam worked for Gouda in his tax preparation business as a computer specialist at Tax World in Atlantic City, and the two men were close friends. A day or two after Gouda said he would talk to his lawyer, Sallam saw Gindhart as he visited the office. The three men - Gouda, Gindhart, and Sallam – met in Sallam's office sitting around Sallam's desk for the beginning of their meeting. Sallam heard everything that Gouda and Gindhart said, and he saw that they had some papers. Sallam testified that he was present about five minutes, felt it was none of his business, and left the room so Gouda and Gindhart could confer further. The Court sustained the Defendant's objection to Sallam testifying about the subject matter of that five-minute conversation pending further briefing of the attorney-client privilege and waiver issues.

Sallam further testified that he never thought he was in trouble or named in the Indictment, nor did he consider Gindhart to be his lawyer.

Gindhart testified that, on March 28, 2007, Department of Justice attorney Shawn Noud faxed the Gouda Indictment to Gindhart. (Feb. 25, 2013 Hr'g Tr. 56:16-24.)

Gindhart had represented Gouda in the IRS criminal investigation since 2004 and was the point of contact with the investigating agents, meeting with IRS agents and Department of Justice attorneys on the matter before Indictment. (Feb. 25, 2013 Hr'g Tr. 52:21-53:3, 67:24-68:6, 68:18-20.) Gindhart recalled receiving the Indictment on March 28, 2007 by fax and does not recall the specific meeting at Tax World. He testified he had visited Gouda on about 20 different occasions in the investigation, including at Tax World, and that he probably went there for the meeting in question as it was just two blocks from his law office. (Feb. 25, 2013 Hr'g Tr. 58:17-59:1, 60:1-7.) Gindhart also testified that he was aware of the April 3, 2007 arraignment date before Judge Schneider, as shown by his letter of April 2, 2007 and his follow-up letter of April 6, 2007. (Exs. G-3 & G-4.)

While the Court instructed Gindhart not to discuss his specific conversations with Gouda, Gindhart testified that his general practice is to inform clients of indictments: "If you're saying if I found out that my client was indicted, would I reach out to him or attempt to reach out to him to tell him you've

16

been indicted, yes, the answer to that is yes." (Feb. 25, 2013 Hr'g Tr. 61:17-20.)

**C. Attorney-Client Privilege and Waiver**

The purpose of the attorney-client privilege is to "encourage full and frank communications between attorneys and their clients. . . ." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). The Third Circuit has enumerated the elements of the privilege as follows:

> The privilege applies only if (1) the asserted holder of the privilege is . . . a client; (2) the person to whom the communication was made . . . is a member of the bar of a court . . . (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

In re Grand Jury Investigation, 599 F.2d 1224, 1233 (3d Cir. 1979). The party asserting the attorney-client privilege bears the burden to show that it applies. In re Grand Jury Empanelled Feb. 14, 1978, 603 F.2d 469, 474 (3d Cir. 1979).

Defendant's February 27, 2013 letter brief regarding attorney-client privilege does not seek to prevent Sallam from testifying about aspects of the meeting that he overheard. Moreover, even if Defendant challenged Sallam's testimony, the attorney-client privilege would not bar his testimony. "A

communication is only privileged if it is made in confidence."

In re Teleglobe Communications Corp., 493 F.3d 345, 361 (3d Cir. 2007) (internal citation omitted). In other words, "if persons other than the client, its attorney, or their agents are present, the communication is not made in confidence, and the privilege does not attach." Id. Defendant's February 22, 2013 letter brief cites case law establishing that communications may remain privileged where third parties are present in capacities identified with the client, such as the client's parent or agent.[7]

Sallam was not present for this meeting in a capacity that would preserve the privilege. He was not Gouda's agent, nor was he a co-defendant. Sallam testified that he was not participating in the meeting, he never went to Gindhart's office, and he was not helping Gindhart and Gouda identify people named by initials in Indictment. (Feb. 25, 2013 Hr'g Tr. 24:1-9.) Sallam also testified that he never believed that Gindhart was his attorney or that he himself was in trouble. (Feb. 25, 2013 Hr'g Tr. 36:14-25.) Gouda and Gindhart were aware of Sallam's presence: he was across the desk from Gouda and

---

[7] Defendant cited Kevlik v. Goldstein, 724 F. 2d 844, 849 (1st Cir. 1984) (privilege not waived when indicted defendant's father was present) and Quagliarello v. DeWees, 802 F. Supp. 2d 620, 632-33 (E.D. Pa. 2011) (privilege not waived when plaintiff's parents and employee of plaintiff's attorney were present).

Gindhart and they were sitting with him in his office. (Feb. 25,
2013 Hr'g Tr. 17:10-17.) While Gouda had not asked Sallam to be
present for the meeting, he also did not ask him to leave;
Sallam left by himself, figuring it was none of his business.
(Feb. 25, 2013 Hr'g Tr. 28:16-18.) Sallam was not present as
Gouda's agent nor to assist Gouda in his meeting with Gindhart.
He had no common interest with Gouda in the defense of the case.

The Court therefore finds that, because a third party was
present, Gouda waived the attorney-client privilege as to the
communications that occurred between him and Gindhart while
Sallam was present for that conversation.

Alternatively, it is clear that Gouda has placed the issue
of his notice of the Indictment's charges into contention. He
has denied prior knowledge of the Indictment in his
certification filed herein. (Certification of Gouda, filed Feb.
21, 2013, at ¶ 7.) Gouda stated:

> I have no recollection of being advised that criminal
> charges were in fact formally filed in court against
> me, and I mainly recall I was in severe distress after
> suffering my third heart attack in less than one year.
> I do not recall that anyone advised me that I needed
> to appear in court. I did return to Egypt on April 6,
> 2007, to continue to be with my family and to rest and
> recover.

Id. His journey to Egypt took two days by way of Abu Dhabi. Id.
He is, of course, asserting his alleged lack of knowledge of his

Indictment and arraignment date as reason to dismiss the indictment for lack of a speedy trial.

In the context of this case, in which the Government, at Gindhart's request, supplied Gindhart on March 28th with the Indictment and the date for arraignment, instead of arresting Gouda, and Gouda is claiming that he left for Egypt on April 6th unaware of the Indictment, Gouda is essentially asserting that Gindhart failed to advise him of the Indictment and the court date on or before April 6th. This necessarily means Gouda is claiming he had no communication with Gindhart between March 28th and April 6th about the Indictment and court date. Where the accused affirmatively raises the absence of communication from counsel as a basis for dismissal of the charges, he has opened the door to inquiry of counsel whether such information was transmitted to the accused. If it was not transmitted, there is no concern with attorney-client privilege because there was no communication. If it was transmitted, that fact can be probed because the privilege is waived to that extent.

A party waives the privilege when he "has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue." Rhone-Poulenc Rorer, Inc. v. Home Indem. Co., 32 F.3d 851, 863 (3d Cir. 1994); see also Tasby v. United States, 504 F.2d 332, 336 (8th Cir. 1974) (attorney-client privilege "is waived when a client attacks his attorney's

20

competence in giving legal advice, puts in issue that advice . . ."). Essentially, there is an "implied waiver of attorney-client privilege that arises when a party puts his counsel's advice in issue." United States v. Pinson, 584 F.3d 972, 977 (10th Cir. 2009). There is an implied waiver in the case at bar because, by claiming that he was unaware of the Indictment, and seeking dismissal of the case based on that fact, Gouda has placed in issue any conversation that he may have had with his attorney about the issuance of the Indictment.

Waiver by implication only extends to communications between attorney and client that lie within the scope of that narrow subject matter, namely, whether Gindart informed Gouda of the indictment and his need to appear in court during the time frame of March 27[8] to April 6, 2007. Other communications, such as legal strategies, tactics, weight of evidence and the like, remain privileged.

**D. Application of Waivers to this Case**

The Court has found that the portion of conversation in late March, 2007 between Defendant Gouda and his lawyer witnessed by Sallam, is not privileged. Sallam may be recalled to testify as to his recollection of that conversation. The

---

[8] Although Gindhart did not receive the faxed copy of the Indictment until March 28, the scope of the waiver begins on March 27, the day the Indictment was returned and filed on the public docket.

Court, in its discretion, will limit Sallam's testimony to evidence pertaining to Gouda's knowledge of the Indictment and necessity of a court appearance, even if he heard more substantive attorney-client discussions. Likewise, attorney Gindhart may be recalled as a witness to testify to his recollection of the conversation as it pertains to discussions of the return of the Indictment, its contents, and the necessity of appearing in Court for arraignment. If refreshing attorney Gindhart's recollection of such meeting and the contents of its discussions is needed, he will be permitted to refer to his own file and documents, including his billing statement, to see if his recollection is refreshed.

The Court also found that Defenant Gouda has waived the attorney-client privilege as to his communications with attorney Gindhart pertaining to the existence of the Indictment and charges against him, and the need to appear in court, for the period of March 27, 2007 (when the Indictment was returned) until April 6, 2007 (when Gouda left the United States for Egypt). This waiver by implication extends only to the subject matter of the waiver, namely, whether Gindhart communicated to Gouda about the existence of the Indictment, its contents, and the need to appear in court during this relevant time period. Thus, Mr. Gindhart may be recalled to the witness stand and the

United States can seek to elicit his testimony within this
scope.

Regarding discovery of documents, Defendant will be
required to produce to the Government redacted copies of Mr.
Gindhart's documents including the billing statement that relate
to his communications with Gouda regarding the existence of the
Indictment and the charges against him and the necessity to
appear in court to face those charges that occurred in the
period of March 27, 2007 to April 6, 2007. Defense counsel may
redact privileged communications outside the scope of this
subject-matter waiver.[9] Those documents, in redacted form, shall
be furnished to the Government within ten (10) days of the entry
of this Opinion and Order.

### E. Resumption of Hearing

The Court will reconvene the hearing on Defendant's motions
for the purpose of taking additional testimony from Mr. Gindhart
and Mr. Sallam within the above scope of the attorney-client
waiver on April 11, 2013 at 10:00 a.m.

### IV.  CONCLUSION

For the above reasons, the Court holds that Defendant has
waived the attorney-client privilege with respect to
communications between Defendant and his former attorney Joseph

---

[9] The Court declines the Government's request to perform this
task by in camera inspection, and it has confidence in defense
counsel's fidelity to this Court's directive.

Gindhart pertaining to Defendant's knowledge of the Indictment and its charges and his obligation to appear in court, occurring during the period of March 27, 2007 to April 6, 2007.

Once the necessary evidence is before the Court, the Court will make a final ruling on Defendant's pre-trial motions regarding speedy trial rights, Fed. R. Crim. P. 48(b), statute of limitations, and discovery.

**March 21, 2013**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
Chief U.S. District Judge